Marc L. Godino (182689)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
Email: mgodino@glancylaw.com

Brian P. Murray (pro hac pending)
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: bmurray@glancylaw.com

*Attorneys for Plaintiff and the Proposed Class*
*Additional Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA RYAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | CASE NO.: |
| v. | **CLASS ACTION COMPLAINT** |
| 23ANDME, INC., | |
| Defendant. | |

Plaintiff Melissa Ryan ("Plaintiff") brings her Class Action Complaint against 23andMe, Inc. ("23andMe" or "Defendant") in her individual capacity and on behalf of all others similarly situated, and allege, upon personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      23andMe is a genomics and biotechnology company based in South San Francisco, California that provides a direct-to-consumer genetic testing service in which

customers provide a saliva sample that is laboratory analyzed, using single nucleotide polymorpherm genotyping, to generate reports relating to the customer's ancestry and genetic predispositions to health-related topics.

2.    On or about October 6, 2023, 23andMe announced on its website that customer profile information was compiled from individual 23andMe.com accounts without account users' authorization that contained both the personally identifiable information ("PII") and protected health information ("PHI") of its customers (collectively, "Private Information").[1] The exposed Private Information may include names, sex, date of birth, genetic ancestry results, profile photos, and geographical information. (the "Data Breach"). However, Defendant has not disclosed when the Data Breach occurred and for how long.

3.    To date, Defendant has not yet disclosed full details of the Data Breach including when it occurred and the length of the exposure of Plaintiff's and Class Members' Private Information or the results and findings of any investigation it undertook. Without such disclosure, questions remain as to the full extent of the cyberattack, the number of customers involved, the actual data compromised, and what measures, if any, Defendant has taken to secure the Private Information still in its possession.

4.    Defendant has failed to provide direct notice to Plaintiff and Class Members and so they are unclear about many of the details surrounding the Data Breach, requiring Plaintiff to spend time and money taking additional steps to protect herself from the harmful effects of the Data Breach.

5.    The Data Breach was a direct result of Defendant's failure to implement

---

[1] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.* ("HIPAA"), protected health information ("PHI") is considered to be individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103. Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, available at: https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last accessed Oct. 30, 2023).

1031088.1
CLASS ACTION COMPLAINT

adequate and reasonable cybersecurity procedures and protocols necessary to protect customers' Private Information. Upon information and belief, the mechanism of the cyberattack and the potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to 23andMe, and thus 23andMe was on notice that failing to take reasonable steps necessary to secure the Private Information from those risks left the Private Information in a vulnerable position.

6.      Defendant disregarded the rights of Plaintiff and Class Members by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure their data systems were protected against unauthorized intrusions; failing to disclose that they did not have reasonable or adequately robust computer systems and security practices to safeguard customers' Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate notice regarding the Data Breach.

7.      As a result of Defendant's failure to implement and follow reasonable security procedures, Plaintiff's and Class Members' Private Information is now in the hands of, and has been viewed by, identity thieves. Plaintiff and Class Members have suffered identity theft and fraud, have had to spend—and will continue to spend—significant amounts of time and/or money in an effort to protect themselves from the adverse ramifications of the Data Breach, and will forever be at a heightened risk of identity theft and fraud.

8.      Plaintiff brings her class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Plaintiff's and Class Members' Private Information that Defendant collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

9.      Plaintiff, on behalf of all others similarly situated, alleges claims for (1) negligence; (2) invasion of privacy; (3) breach of contract; (4) breach of implied contract; (5)

unjust enrichment; (6) violation of the California Unfair Competition Law (Cal. Business & Professions Code § 17200, *et seq.*) for unlawful, fraudulent, and unfair business practice; (7) violation of the Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq.*); (8) violation of the California Consumer Privacy Act (Cal. Civ. Code § 17598.82 *et seq.* and (9) injunctive and declaratory relief.

10.    Plaintiff seeks remedies including, but not limited to, compensatory damages for identity theft, fraud, and time spent, reimbursement of out-of-pocket costs, adequate credit monitoring services funded by Defendant, and injunctive relief including improvements to Defendant's data security systems and practices to ensure they have reasonably sufficient security practices to safeguard customers' Private Information that remains in Defendant's custody to prevent incidents like the Data Breach from reoccurring in the future.

11.    As a direct and proximate result of Defendant's wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, Plaintiff has incurred (and will continue to incur) economic damages and other actual injury and harm in the form of (i) actual identity theft or identity fraud; (ii) the untimely and/or inadequate notification of the Data Breach; (iii) unauthorized disclosure of her PII; (iv) breach of the statutorily-protected confidentiality of her PII; (v) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud caused by the Data Breach; (vi) the value of her time spent mitigating the impact of the Data Breach and mitigating increased risk of identity theft and/or identity fraud; (vii) deprivation of the value of her PII, for which there is a well-established national and international market; and (vii) the impending, imminent, and ongoing increased risk of future identity theft, identity fraud, economic damages, and other actual injury and harm.

## PARTIES

12.    Plaintiff Melissa Ryan is a resident of California and has been a customer of 23andMe since November 2014.

13.    Defendant 23andMe, Inc. Genetics Corporation is a Delaware corporation with its principal place of business in South San Francisco, California.

1031088.1

1

**JURISDICTION AND VENUE**

2        14.     The Court has subject matter jurisdiction over the action under the Class Action

3   Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million,

4   exclusive of interest and costs, there are more than 100 members in the proposed class, and at

5   least one member of the class is a citizen of a state different from Defendant.

6        15.     This Court has personal jurisdiction over Defendant because 23andMe is

7   headquartered in California, its principal place of business is in California, and it regularly

8   conducts business in California.

9        16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a

10  substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in,

11  was directed to, and/or emanated from this District, and 23andMe is in this District, and has

12  caused harm to Plaintiff and Class Members residing in this District.

13

**STATEMENT OF FACTS**

14  **A. 23andMe's Business.**

15       17.     23andMe was founded in 2006 and began offering direct-to-consumer genetic

16  testing in November 2007 in which customers provide a saliva sample that is laboratory

17  analyzed, using single nucleotide polymorpherm genotyping, to generate reports relating to the

18  customer's ancestry and genetic predispositions to health-related topics, and results are posted

19  online.

20       18.     23andMe provides DNA test kits that are a direct-to-consumer form of genetic

21  testing. These genetic testing kits yield information about your health, genetic traits, and

22  ancestry. After a customer provides their saliva sample, they register the collection tube using

23  the barcode and then mail it back. 23andMe offers a health and ancestry service which

24  includes health reports on genetic health risk, carrier status, wellness, and pharmacogenetics.

25  23andMe also offers an annual membership that contains everything in the health and ancestry

26  service plus access to ongoing genetic insights. Each of these services and membership have

27  different costs.

28       19.     Due to the nature of these services, 23andMe must store customers' Private

1031088.1                                 CLASS ACTION COMPLAINT

Information in its system. 23andMe accomplishes this by keeping the Private Information electronically. 23andMe has more than 14 million customers worldwide and as of December 2022 has genotyped over 5,000,000 individuals.[2]

20.    Customers demand security to safeguard their Private Information. 23andMe is required to ensure that such private, personal information is not disclosed or disseminated to unauthorized third parties without the customers' express, written consent, as further detailed below.

**B. The Data Breach.**

21.    On October 6, 2023, Defendant announced in a Blog on its website that customers' accounts had been accessed by unauthorized individuals. The announcement titled "Addressing Data Security Concerns" stated the following:

> We recently learned that certain 23andMe customer profile information that they opted into sharing through our DNA Relatives feature, was compiled from individual 23andMe.com accounts without the account users' authorization.

> After learning of suspicious activity, we immediately began an investigation. While we are continuing to investigate this matter, we believe threat actors were able to access certain accounts in instances where users recycled login credentials – that is, usernames and passwords that were used on 23andMe.com were the same as those used on other websites that have been previously hacked.

> We believe that the threat actor may have then, in violation of our Terms of Service, accessed 23andMe.com accounts without authorization and obtained information from certain accounts, including information about users' DNA Relatives profiles, to the extent a user opted into that service.[3]

22.    In addition, the Defendant touted its commitment to safety and security in its announcement, stating the following:

> 23andMe is committed to providing you with a safe and secure place where you can learn about your DNA knowing your privacy is protected. We are continuing to investigate to confirm these preliminary results. We do not have any indication at this time that there has been a data security incident within our systems, or that

---

[2]  23AndMe. "DNA Ancestry Test Kit: Find DNA Relatives - 23andMe International". www.23andme.com.

[3] https://blog.23andme.com/articles/addressing-data-security-concerns

1031088.1

23andMe was the source of the account credentials used in these attacks.

> At 23andMe, we take security seriously. We exceed industry data protection standards and have achieved three different ISO certifications to demonstrate the strength of our security program. We actively and routinely monitor and audit our systems to ensure that your data is protected. When we receive information through those processes or from other sources claiming customer data has been accessed by unauthorized individuals, we immediately investigate to validate whether this information is accurate. Since 2019 we've offered and encouraged users to use multi-factor authentication (MFA), which provides an extra layer of security and can prevent bad actors from accessing an account through recycled passwords.[4]

23. However, Defendant failed to send individual notices to affected customers and their Blog notification fails to disclose how many individuals were affected, what information was accessed other than "customer profile information" and "information about users' DNA Relatives profiles"[5], and when and for how long the information was accessed.

24. 23andMe's Notice of Data Breach was woefully deficient, failing to provide basic details concerning the Data Breach, including, but not limited to, how unauthorized parties accessed its employee's e-mail account, whether the information was encrypted or otherwise protected, how it learned of the Data Breach, whether the breach was a system-wide breach, whether servers storing information were accessed, and how many customers were affected by the Data Breach. Even worse, 23andMe has not offered any identity monitoring to Plaintiff and other Class Members.

25. Plaintiff's and Class Members' Private Information is already for sale to criminals on the dark web meaning unauthorized parties have accessed and viewed Plaintiff's and Class Members' unencrypted, unredacted information.

26. In fact, on October 7, 2023, NBC News reported and confirmed the following: A database that has been shared on dark web forums and viewed by NBC News has a list of 999,999 people who allegedly have used the service. It includes their first and last name, sex, and 23andMe's evaluation of where their ancestors came from. The database is titled

---

[4] *Id.*
[5] *Id.*

CLASS ACTION COMPLAINT

1031088.1

"ashkenazi DNA Data of Celebrities," though most of the people on it aren't famous, and it appears to have been sorted to only include people with Ashkenazi heritage.[6]

27.     In addition, NBC News further reported that "A user on a popular hacker forum had claimed to have made a larger database of users for sale earlier this week."[7]

28.     This Private Information disclosure which includes almost one million people of Ashkenazi heritage is even more concerning and frightening given the almost simultaneous attack on Israel.

29.     On October 9, 2023, 23andMe updated its October 6, 2023 announcement and failed to disclose any useful additional information other that their investigation continues, they "engaged the assistance of third-party forensic experts and are working with "federal law enforcement officials."[8]

**C. Plaintiff's Efforts to Secure Their Private Information.**

30.     Plaintiff Ryan has been a customer of 23andMe since November 2014. In order to use Defendant's services, Plaintiff Ryan was required to provide her Personal Information to Defendant and expected that her information would be kept confidential.

31.     After learning of the Data Breach, Plaintiff Ryan has spent numerous hours taking action to mitigate the impact of the Data Breach, which included diligently checking her credit monitoring service and her financial accounts. This is time Plaintiff Ryan otherwise would have spent performing other activities or leisurely events for the enjoyment of life. This loss of time was a direct result of the Data Breach.

32.     As a result of the Data Breach, Plaintiff Ryan has suffered emotional distress as a result of the release of her protected health information which she expected 23andMe to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her personal and medical information.

---

[6]     https://www.nbcnews.com/news/us-news/23andme-user-data-targeting-ashkenazi-jews-leaked-online-rcna119324.
[7] *Id.*
[8]     https://www.nbcnews.com/news/us-news/23andme-user-data-targeting-ashkenazi-jews-leaked-online-rcna119324.

33.     Plaintiff Ryan suffered actual injury from having her Private Information exposed as a result of the Data Breach including, but not limited to (a) paying monies to Defendant for its goods and services which she would not have had to do had Defendant disclosed that it lacked data security practices adequate to safeguard patients' Private Information from theft; (b) damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff Ryan entrusted to Defendant as a condition for their services; (c) loss of her privacy; (d) lost time; and (e) imminent and impending injury arising from the increased risk of fraud and identity theft. As a result of the Data Breach, Plaintiff Ryan will continue to be at heightened risk for financial fraud, medical fraud, and identity theft, and the attendant damages, for years to come.

**D. 23andMe's Privacy Policies.**

34.     23andMe makes numerous promises to its customers that it will maintain the security and privacy of their Private Information. On its website under Privacy, 23andMe states that:

> Your privacy comes first. When you explore your DNA with 23andMe, you entrust us with important personal information. That's why, since day one, protecting your privacy has been our number one priority. We're committed to providing you with a safe place where you can learn about your DNA knowing your privacy is protected.

> We exceed industry data protection standards and have achieved 3 different ISO certifications to demonstrate the strength of our security program.

> We encrypt all sensitive information and conduct regular assessments to identify security vulnerabilities and threats.[9]

35.     23andMe further touts on its website under Privacy the following[10]:

> Your data is fiercely protected by security practices that are regularly reviewed and updated.

> Your genetic information deserves the highest level of security, because without security, you can't have privacy. 23andMe employs software, hardware, and physical security measures to protect your data. And while no security standard or system is bulletproof, we're doing everything in our power to keep your personal

[9] https://www.23andme.com/privacy/.
[10] *Id.*

1    data safe.

2    36.    On its website in response to the question "What do you do to stay a step ahead

3    of hackers?" 23andMe states "We take multiple steps. First of all, third-party security experts

4    regularly conduct audits and assessments of our systems, ensuring we will never let our guard

5    down. We encrypt all sensitive information, both when it is stored and when it is being

6    transmitted, so that we make it difficult for potential hackers to gain access."[11]

7    37.    In its Privacy Statement, under Security Measures, 23andMe states that "We

8    implement physical, technical, and administrative measures aimed at preventing unauthorized

9    access to or disclosure of your Personal Information. Our team regularly reviews and improves

10   our security practices to help ensure the integrity of our systems and your Personal

11   Information"[12]

12   38.    23andMe further states in its Privacy Statement the following:

13   **Enforce, investigate, and report conduct violating our Terms of Service or
     other policies**

14

15   We believe everyone deserves a safe place to discover and understand their DNA,
     which means we need to keep our platform a safe place for all. We use
16   information to monitor, detect, prevent, investigate and mitigate any suspected or
     actual fraud, prohibited or illegal behaviors on our Services, to combat spam, and
17   other behaviors or actions that break the promises we outline in our Terms of
     Service.[13]
18

19   39.    23andMe describes how it may use and disclose Private Information for each

20   category of uses or disclosures, none of which provide it a right to expose customers' Private

21   Information in the manner it was exposed to unauthorized third parties in the Data Breach. By

22   failing to protect Plaintiff's and Class Members' Private Information, and by allowing the Data

23   Breach to occur, 23andMe broke these promises to Plaintiff and Class Members.

24   **E. 23andMe Acquires, Collects and Stores Its Customers' Private Information.**

25   40.    23andMe acquires, collects, and stores a massive amount of its customers'

26

27   _____
     [11] *Id.*
     [12] https://www.23andme.com/legal/privacy/full-version/.
28   [13] https://www.23andme.com/legal/how-to-use-info/.

Private Information.

41.   As a condition of engaging in their services, 23andMe requires that these customers entrust them with highly confidential Private Information.

42.   By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, 23andMe assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

43.   Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information, and, as current and former customers, they relied on 23andMe to keep their information confidential and securely maintained, to use their information for business purposes only, and to make only authorized disclosures of their information.

**F. The Value of Private Information and the Effects of Unauthorized Disclosure.**

44.   At all relevant times, Defendant was well aware that the Private Information it collects from Plaintiff and Class Members is highly sensitive and of significant value to those who would use it for wrongful purposes.

45.   Private Information is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use their information to commit an array of crimes including identify theft, and medical and financial fraud.[14] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII and PHI on multiple underground Internet websites, commonly referred to as the dark web.

46.   While credit card information and associated PII can sell for as little as $1-$2 on the black market, PHI can sell for as much as $363 according to the Infosec Institute.[15]

47.   PHI is particularly valuable because criminals can use it to target victims with

---

[14]   Federal Trade Commission, *What To Know About Identity Theft*, available at: https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Oct. 30, 2023).

[15]   Center for Internet Security, *Data Breaches: In the Healthcare Sector*, available at: https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last accessed Oct. 30, 2023)

1031088.1                    CLASS ACTION COMPLAINT

frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

48.     Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[16]

49.     Similarly, the FBI Cyber Division, in an April 8, 2014, Private Industry Notification, advised:

> Cyber criminals are selling [medical] information on the black market at a rate of $50 for each partial EHR, compared to $1 for a stolen social security number or credit card number. EHR can then be used to file fraudulent insurance claims, obtain prescription medication, and advance identity theft. EHR theft is also more difficult to detect, taking almost twice as long as normal identity theft.

50.     The ramifications of 23andMe's failure to keep its customers' Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

51.     Further, criminals often trade stolen Private Information on the "cyber black-market" for years following a breach. Cybercriminals can post stolen Private Information on the internet, thereby making such information publicly available.

52.     Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they

---

[16] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," KFF Health News, Feb. 7, 2014, https://kffhealthnews.org/news/rise-of-indentity-theft/ (last accessed Oct. 30, 2023).

1    were a victim of medical identity theft only when they received collection letters from

2    creditors for expenses that were incurred in their names.

3         53.    Indeed, when compromised, healthcare related data is among the most private

4    and personally consequential. A report focusing on healthcare breaches found that the

5    "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and

6    that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive

7    in order to restore coverage.[17] Almost 50% of the surveyed victims lost their healthcare

8    coverage as a result of the incident, while nearly 30% said their insurance premiums went up

9    after the event. Forty percent of the victims were never able to resolve their identity theft at all.

10   Seventy-four percent said that the effort to resolve the crime and restore their identity was

11   significant or very significant. Data breaches and identity theft have a crippling effect on

12   individuals and detrimentally impact the economy as a whole.[18]

13        54.    As a provider of DNA testing services, 23andMe knew, or should have known,

14   the importance of safeguarding its customers' Private Information entrusted to it and of the

15   foreseeable consequences if its data security systems were breached. This includes the

16   significant costs that would be imposed on 23andMe's customers as a result of a breach.

17   23andMe failed, however, to take adequate cybersecurity measures to prevent the Data Breach

18   from occurring.

19        55.    The compromised Private Information in the Data Breach is of great value to

20   hackers and thieves and can be used in a variety of ways. Information about, or related to, an

21   individual for which there is a possibility of logical association with other information is of

22   great value to hackers and thieves. Indeed, "there is significant evidence demonstrating that

23   technological advances and the ability to combine disparate pieces of data can lead to

24   identification of a consumer, computer, or device even if the individual pieces of data do not

25

26   _____

27   [17] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), available
     at: https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed
     Oct. 30, 2023); *see also*, National Survey on Medical Identity Theft, Feb. 22, 2010, cited at p. 2.

28   [18] *Id.*

CLASS ACTION COMPLAINT

constitute PII.[19] For example, different PII elements from various sources may be able to be linked in order to identify an individual, or access additional information about or relating to the individual. Based upon information and belief, the unauthorized parties utilized the Private Information they obtained through the Data Breach to obtain additional information of Plaintiff and Class Members that were misused.

56.     Further, as technology advances, computer programs may scan the Internet with wider scope to create a mosaic of information that may be used to link information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

57.     Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts, particularly when they have easily-decrypted passwords and security questions.

58.     The Private Information exposed is of great value to hackers and cyber criminals and the data compromised in the Data Breaches can be used in a variety of unlawful manners, including opening new credit and financial accounts in users' names.

**G. 23andMe's Conduct Violates HIPAA.**

59.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of PHI. Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.[20]

60.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Private Information like the data Defendant left unguarded. The

---

[19] "Varonis Says Shift in FTC Consumer Privacy Policy May Signal New Laws In US" (Nov. 6, 2012), available at https://telecomreseller.com/2012/11/06/varonis-says-shift-in-FTC-consumer-privacy-may-signal-new-laws-in-us/?emp (last accessed Oct. 30, 2023).

[20] HIPAA Journal, What is Considered Protected Health Information Under HIPAA?, available at: https://www.hipaajournal.com/what-is-considered-protected-health-information-under-hipaa/ (last accessed Oct. 30, 2023).

1031088.1

1   HHS has subsequently promulgated five rules under authority of the Administrative
2   Simplification provisions of HIPAA.

3        61.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required
4   Defendant to provide notice of the breach to each affected individual "without unreasonable
5   delay and in no case later than 60 days following discovery of the breach."[21]

6        62.    Based on information and belief, Defendant's Data Breach resulted from a
7   combination of insufficiencies that demonstrate Defendant failed to comply with safeguards
8   mandated by HIPAA regulations. 23andMe's security failures include, but are not limited to,
9   the following:

10       a. Failing to ensure the confidentiality and integrity of electronic protected health
11  information that Defendant creates, receives, maintains, and transmits in violation of 45 C.F.R.
12  §164.306(a)(1);

13       b. Failing to implement technical policies and procedures for electronic information
14  systems that maintain electronic protected health information to allow access only to those
15  persons or software programs that have been granted access rights in violation of 45 C.F.R.
16  §164.312(a)(1);

17       c. Failing to implement policies and procedures to prevent, detect, contain, and correct
18  security violations in violation of 45 C.F.R. §164.308(a)(1);

19       d. Failing to identify and respond to suspected or known security incidents; mitigate, to
20  the extent practicable, harmful effects of security incidents that are known to the covered
21  entity in violation of 45 C.F.R. §164.308(a)(6)(ii);

22       e. Failing to protect against any reasonably-anticipated threats or hazards to the
23  security or integrity of electronic protected health information in violation of 45 C.F.R.
24  §164.306(a)(2);

25       f. Failing to protect against any reasonably anticipated uses or disclosures of

26

27  [21]   Breach   Notification   Rule,   U.S.   Dep't   of   Health   &   Human   Services,
28  https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last visited Oct. 30,
    2023).

1031088.1
CLASS ACTION COMPLAINT

1  electronically protected health information that are not permitted under the privacy rules

2  regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3);

3       g. Failing to ensure compliance with HIPAA security standard rules by their workforce

4  in violation of 45 C.F.R. §164.306(a)(94);

5       h. Impermissibly and improperly using and disclosing protected health information that

6  is and remains accessible to unauthorized persons in violation of 45 C.F.R. §164.502, *et seq.*;

7       i. Failing to effectively train all members of their workforce (including independent

8  contractors) on the policies and procedures with respect to protected health information as

9  necessary and appropriate for the members of their workforce to carry out their functions and

10 to maintain security of protected health information in violation of 45 C.F.R. §164.530(b) and

11 45 C.F.R. §164.308(a)(5); and

12      j. Failing to design, implement, and enforce policies and procedures establishing

13 physical and administrative safeguards to reasonably safeguard protected health information,

14 in compliance with 45 C.F.R. §164.530(c).

15 **H. 23andMe Failed to Comply with FTC Guidelines**.

16      63.    23andMe was also prohibited by the Federal Trade Commission Act ("FTC

17 Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting

18 commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure

19 to maintain reasonable and appropriate data security for consumers' sensitive personal

20 information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham*

21 *Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

22      64.    The FTC has promulgated numerous guides for businesses that highlight the

23 importance of implementing reasonable data security practices. According to the FTC, the

24 need for data security should be factored into all business decision-making.[22]

25      65.    In 2016, the FTC updated its publication, *Protecting Personal Information: A*

26

27 [22] Federal Trade Commission, *Start With Security: A Guide for Business*, available at:
   https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf    (last
28 accessed Oct. 30, 2023)

*Guide for Business*, which established cybersecurity guidelines for businesses.[23] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

66.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[24]

67.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

68.    23andMe failed to properly implement basic data security practices. 23andMe's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

69.    23andMe was at all times fully aware of its obligation to protect the Private Information of customers because of its position as a trusted healthcare provider. 23andMe was also aware of the significant repercussions that would result from its failure to do so.

**I. 23andMe Failed to Comply with Healthcare Industry Standards.**

70.    HHS's Office for Civil Rights notes:

---

[23] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Oct. 30, 2023).

[24] FTC, Start With Security, *supra* note 22.

While all organizations need to implement policies, procedures, and technical solutions to make it harder for hackers to gain access to their systems and data, this is especially important in the healthcare industry. Hackers are actively targeting healthcare organizations, as they store large quantities of highly Private and valuable data.[25]

71.     HHS highlights several basic cybersecurity safeguards that can be implemented to improve cyber resilience that require a relatively small financial investment, yet can have a major impact on an organization's cybersecurity posture including: (a) the proper encryption of Private Information; (b) educating and training healthcare employees on how to protect Private Information; and (c) correcting the configuration of software and network devices.

72.     Private cybersecurity firms have also identified the healthcare sector as being particularly vulnerable to cyber-attacks, both because of the value of the Private Information which they maintain and because as an industry they have been slow to adapt and respond to cybersecurity threats.[26] They too have promulgated similar best practices for bolstering cybersecurity and protecting against the unauthorized disclosure of Private Information.

73.     Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry, 23andMe chose to ignore them. These best practices were known, or should have been known by 23andMe, whose failure to heed and properly implement them directly led to the Data Breach and the unlawful exposure of Private Information.

**J. Plaintiff and Class Members Suffered Damages.**

74.     The ramifications of 23andMe's failure to keep customers' Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.

---

[25]   HIPAA Journal, Cybersecurity Best Practices for Healthcare Organizations, https://www.hipaajournal.com/important-cybersecurity-best-practices-for-healthcare-organizations/ (last accessed Oct. 30, 2023).
[26]   *See e.g.,* INFOSEC, *10 Best Practices For Healthcare Security,* available at*:* https://resources.infosecinstitute.com/topics/healthcare-information-security/10-best-practices-healthcare-secuity/ (last accessed Oct. 30, 2023).

75.     The state of California generally prohibits healthcare providers from disclosing a customer's confidential medical information without prior authorization. California's Confidentiality of Medical Information Act ("CMIA") (Cal. Civ. Code § 56.10(a)) states that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a customer of the provider of health care or enrollee or subscriber of a health care service plan without first obtaining an authorization except as provided in subdivision (b) or (c)." (*See also* Cal. Civ. Code §§ 1798.80, *et seq.*)

76.     In addition to their obligations under state laws and regulations, Defendant owed a common law duty to Plaintiff and Class Members to protect Private Information entrusted to it, including to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized parties.

77.     Defendant further owed and breached its duty to Plaintiff and Class Members to implement processes and specifications that would detect a breach of its security systems in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

78.     As a direct result of Defendant's intentional, willful, reckless, and negligent conduct which resulted in the Data Breach, unauthorized parties were able to access, acquire, view, publicize, and/or otherwise cause the identity theft and misuse to Plaintiff's and Class Members' Private Information as detailed above, and Plaintiff are now at a heightened and increased risk of identity theft and fraud.

79.     The risks associated with identity theft are serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit.

80.     Other risks of identity theft include loans opened in the name of the victim,

1   medical services billed in their name, utility bills opened in their name, tax return fraud, and

2   credit card fraud.

3       81.    Plaintiff did not have her genetic information compromised through any other

4   data breaches, to her knowledge.

5       82.    Plaintiff and Class Members did not receive the full benefit of the bargain, and

6   instead received healthcare and other services that were of a diminished value to that described

7   in their agreements with 23andMe and they were damaged in an amount at least equal to the

8   difference in the value of the healthcare with data security protection they paid for and the

9   healthcare they received.

10      83.    As a result of the Data Breach, Plaintiff's and Class Members' Private

11  Information has diminished in value.

12      84.    The Private Information belonging to Plaintiff and Class Members is private,

13  private in nature, and was left inadequately protected by Defendant who did not obtain

14  Plaintiff's or Class Members' consent to disclose such Private Information to any other person

15  as required by applicable law and industry standards.

16      85.    Plaintiff's and Class Members' Private Information may end up for sale on the

17  dark web, or simply fall into the hands of companies that will use the detailed PII for targeted

18  marketing, particularly scam marketing, without the approval of Plaintiff and Class Members.

19  Due to the Data Breach, unauthorized individuals can easily access the Private Information of

20  Plaintiff and Class Members.

21      86.    The Data Breach was a direct and proximate result of Defendant's failure to (a)

22  properly safeguard and protect Plaintiff's and Class Members' Private Information from

23  unauthorized access, use, and disclosure, as required by various state and federal regulations,

24  industry practices, and common law; (b) establish and implement appropriate administrative,

25  technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and

26  Class Members' Private Information; and (c) protect against reasonably foreseeable threats to

27  the security or integrity of such information.

28      87.    Defendant had the resources necessary to prevent the Data Breach, but

1031088.1

1  neglected to adequately implement data security measures, despite its obligation to protect
2  customer data.

3      88.    Had Defendant remedied the deficiencies in their data security systems and
4  adopted security measures recommended by experts in the field, they would have prevented
5  the intrusions into its systems and, ultimately, the theft of Plaintiff's and Class Members'
6  Private Information.

7      89.    As a direct and proximate result of Defendant's wrongful actions and inactions,
8  Plaintiff and Class Members have been placed at an imminent, immediate, and continuing
9  increased risk of harm from identity theft and fraud, requiring them to take the time which they
10 otherwise would have dedicated to other life demands such as work and family in an effort to
11 mitigate the actual and potential impact of the Data Breach on their lives.

12     90.    The U.S. Department of Justice's Bureau of Justice Statistics found that
13 "among victims who had personal information used for fraudulent purposes, twenty-nine
14 percent spent a month or more resolving problems" and that "resolving the problems caused
15 by identity theft may take more than a year for some victims."[27]

16     91.    23andMe has not offered or provided victims any identity monitoring services
17 or fraud insurance. 23andMe's lack of an offer fails to address the fact that victims of data
18 breaches and other unauthorized disclosures commonly face multiple years of ongoing identity
19 theft, medical and financial fraud, and it entirely fails to provide sufficient compensation for
20 the unauthorized release and disclosure of Plaintiff's and Class Members' Private Information.

21     92.    Defendant does not appear to be taking any measures to assist Plaintiff and
22 Class Members other than telling them to reset their password if they do not have a strong
23 password and enable multi-factor authentication on customer's 23andMe account. None of
24 these recommendations, however, require Defendant to expend any effort to protect Plaintiff's
25 and Class Members' Private Information.

26

27 [27] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013, available at: https://www.bjs.gov/content/pub/pdf/vit12.pdf
28 (last accessed Oct. 30, 2023).

CLASS ACTION COMPLAINT
1031088.1

93.     Plaintiff and Class Members have been damaged in several ways. All Plaintiff and Class Members have been exposed to an impending, imminent, and ongoing increased risk of fraud, identity theft, and other misuse of their Private Information. Plaintiff and Class members must now and indefinitely closely monitor their financial and other accounts to guard against fraud. This is a burdensome and time-consuming activity. Certain members have also purchased credit monitoring and other identity protection services, purchased credit reports, placed credit freezes and fraud alerts on their credit reports, and spent time investigating and disputing fraudulent or suspicious activity on their accounts. Plaintiff and Class members also suffered a loss of the inherent value of their Private Information.

94.     PII stolen in the Data Breach can be misused on its own or can be combined with personal information from other sources such as publicly available information, social media, etc. to create a package of information capable of being used to commit further identity theft. Thieves can also use the stolen PII to send spear-phishing emails to Class members to trick them into revealing sensitive information. Lulled by a false sense of trust and familiarity from a seemingly valid sender (for example Wells Fargo, Amazon, or a government entity), the individual agrees to provide sensitive information requested in the email, such as login credentials, account numbers, and the like.

95.     As a result of Defendant's failures to prevent the Data Breach, Plaintiff and Class Members have suffered, will suffer, and are at increased risk of suffering:

a.     The compromise, publication, theft and/or unauthorized use of their Private Information;

b.     Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

c.     Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

d.     The continued risk to their Private Information, which remains in the

possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Private Information in their possession;

e.      Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and

f.      Anxiety and distress resulting from fear of misuse of their genetic medical information.

96.      In addition to a remedy for the economic harm, Plaintiff and Class Members maintain an undeniable interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

**CHOICE OF LAW**

97.      The State of California has a significant interest in regulating the conduct of businesses operating within its borders. California seeks to protect the rights and interests of all California residents and citizens of the United States against a company headquartered and doing business in California. California has a greater interest in the nationwide claims of Plaintiff and members of the Nationwide Class than any other state and is most intimately concerned with the claims and outcome of this litigation.

98.      The corporate headquarters of 23andMe in South San Francisco, California, is the "nerve center" of their business activities – the place where their officers direct, control, and coordinate the companies' activities, including their data security functions and policy, financial, and legal decisions.

99.      23andMe's response to the Data Breach at issue here, and corporate decisions surrounding such response, were made from and in California.

100.      23andMe's breaches of duty to Plaintiff and Nationwide Class members emanated from California.

101.      Application of California law to the Nationwide Class with respect to Plaintiff's and Class Members' claims is neither arbitrary nor fundamentally unfair because California has significant contacts and a significant aggregation of contacts that create a state interest in

the claims of Plaintiff and the Nationwide Class.

102.    Under California's choice of law principles, which are applicable to this action, the common law of California applies to the nationwide common law claims of all Nationwide Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's Unfair Competition Law and Confidentiality of Medical Information Act may be applied to non-resident Plaintiffs as against 23andMe.

**CLASS ALLEGATIONS**

103.    Plaintiff brings her class action on behalf of herself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class: All individuals whose Private Information was compromised in the data breach first announced by 23andMe on or about October 6, 2023.**

104.    In the alternative to the Nationwide Class, Plaintiff seeks certification of the following state Sub-Class:

> **California Sub-Class: All persons residing in California whose Private Information was compromised in the data breach first announced by 23andMe on or about October 6, 2023.**

105.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

106.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

107.   Numerosity, Fed. R. Civ. P. 23(a)(1): The National Class, and State Subclass (the "Classes") are so numerous that joinder of all members is impracticable. Plaintiff believes that thousands of customers' Private Information may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within Defendant's records.

108.   Commonality, Fed. R. Civ. P. 23(a)(2): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a. When Defendant actually learned of the Data Breach and whether their response was adequate;

b. Whether Defendant owed a duty to the Classes to exercise due care in collecting, storing, safeguarding and/or obtaining their Private Information;

c. Whether Defendant breached that duty;

d. Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' Private Information;

e. Whether Defendant acted negligently in connection with the monitoring and/or protecting of Plaintiffs' and Class Members' PII/PHI;

f. Whether Defendant knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class Members' PII/PHI secure and prevent loss or misuse of that Private Information;

g. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h. Whether Defendant caused Plaintiff's and Class Members' damages;

i. Whether Defendant violated the law by failing to promptly notify Class Members that their Private Information had been compromised;

j. Whether Plaintiff and other Class Members are entitled to actual damages, identity and/or credit monitoring, and other monetary relief;

k. Whether Defendant violated the California Unfair Competition Law

1    (Business & Professions Code § 17200, *et seq.*); and

2         l. Whether Defendant violated the Confidentiality of Medical Information Act

3    (Cal. Civ. Code. § 56, *et seq.*).

4    109.    Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of

5    other Class Members because all had their Private Information compromised as a result of the

6    Data Breach, due to Defendant's misfeasance.

7    110.    Policies Generally Applicable to the Class: This class action is also appropriate

8    for certification because Defendant has acted or refused to act on grounds generally applicable

9    to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible

10   standards of conduct toward the Class Members and making final injunctive relief appropriate

11   with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect

12   Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's

13   conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

14   111.    Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately

15   represent and protect the interests of the Class Members in that they have no disabling

16   conflicts of interest that would be antagonistic to those of the other Members of the Class.

17   Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the

18   infringement of the rights and the damages they have suffered are typical of other Class

19   Members. Plaintiff has retained counsel experienced in complex consumer class action

20   litigation, and Plaintiff intends to prosecute this action vigorously.

21   112.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is

22   an appropriate method for the fair and efficient adjudication of the claims involved. Class

23   action treatment is superior to all other available methods for the fair and efficient adjudication

24   of the controversy alleged herein; it will permit a large number of class members to prosecute

25   their common claims in a single forum simultaneously, efficiently, and without the

26   unnecessary duplication of evidence, effort, and expense that hundreds of individual actions

27   would require. Class action treatment will permit the adjudication of relatively modest claims

28   by certain class members, who could not individually afford to litigate a complex claim against

1031088.1

large corporations, like Defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

113.    The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

114.    23andMe's based in South San Francisco, California and, on information and belief, all managerial decisions emanate from there, the representations on 23andMe's website originate from there, 23andMe's misrepresentations originated from there, and therefore application of California law to the Nationwide Class is appropriate.

115.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting her lawsuit as a class action.

116.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

117.    Unless a Class-wide injunction is issued, Plaintiff and Class Members remain at risk that Defendant will continue to fail to properly secure the Private Information of Plaintiff and Class Members resulting in another data breach, continue to refuse to provide proper notification to Class Members regarding the Data Breach, and continue to act unlawfully as set forth in this Complaint.

1031088.1

118.    Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

119.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c. Whether Defendant failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e. Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Classes)**

120.    Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

121.    As a condition of receiving services, Plaintiff and Class Members were

1031088.1
CLASS ACTION COMPLAINT

1    obligated to provide 23andMe with their Private Information.

2        122.    Plaintiff and Class Members entrusted their Private Information to 23andMe

3    with the understanding that 23andMe would safeguard their information.

4        123.    Defendant had full knowledge of the sensitivity of the Private Information and

5    the types of harm that Plaintiff and Class Members could and would suffer if the Private

6    Information were wrongfully disclosed. Defendant had a duty to exercise reasonable care in

7    safeguarding, securing, and protecting such information from being compromised, lost, stolen,

8    misused, and/or disclosed to unauthorized parties. This duty includes, among other things,

9    designing, maintaining, and testing its security protocols to ensure that Private Information in

10   its possession was adequately secured and protected and that employees tasked with

11   maintaining such information were adequately training on relevant cybersecurity measures.

12       124.    Plaintiff and Class Members were the foreseeable and probable victims of any

13   inadequate security practices and procedures. Defendant knew of or should have known of the

14   inherent risks in collecting and storing the Private Information of Plaintiff and Class Members,

15   the critical importance of providing adequate security of that Private Information, the current

16   cyber scams being perpetrated, and that they had inadequate employee training and education

17   and IT security protocols in place to secure the Private Information of Plaintiff and Class

18   Members.

19       125.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and

20   Class Members. Defendant's misconduct included, but was not limited to, their failure to take

21   the steps and opportunities to prevent the Data Breach as set forth herein.

22       126.    Plaintiff and Class Members had no ability to protect their Private Information

23   that was in Defendant's possession.

24       127.    Defendant was in a position to protect against the harm suffered by Plaintiff and

25   Class Members as a result of the Data Breach.

26       128.    Defendant had a duty to put proper procedures in place to prevent the

27   unauthorized dissemination of Plaintiff's and Class Members' Private Information.

28       129.    Defendant has admitted that Plaintiff's and Class Members' Private Information

CLASS ACTION COMPLAINT

was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

130.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information while it was within Defendant's possession or control.

131.    Defendant improperly and inadequately safeguarded Plaintiff's and Class Members' Private Information in violation of standard industry rules, regulations, and practices at the time of the Data Breach.

132.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

133.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

134.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' Private Information would not have been compromised and/or subsequently misused by unauthorized third parties to engage in fraudulent activity further harming Plaintiff and Class Members.

135.    There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the Private Information and the harm suffered, or risk of imminent harm suffered, by Plaintiff and the Class.

136.    As a result of Defendant's negligence, unauthorized parties acquired Plaintiff's Private Information and used that specific information to harm Plaintiff and Class Members as described above. As a further result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer damages and injury including, but not limited to, (a) actual identity theft; (b) an increased risk of identity theft, fraud, and/or misuse of their Private Information; (c) the loss of the opportunity of how their Private Information is used; (d) the compromise, publication, and/or theft of their Private Information; (e) out-of-pocket expenses

associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (f) diminished value of the Private Information; (g) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (h) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (i) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

**COUNT II**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiff and the Classes)**

137.    Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

138.    Plaintiff and Class Members had a legitimate and reasonable expectation of privacy with respect to their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

139.    Defendant owed a duty to customers in their network, including Plaintiff and Class Members, to keep their Private Information confidential.

140.    The unauthorized release of Private Information, especially the type related to personal health information, is highly offensive to a reasonable person.

141.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to Defendant as part of their use of Defendant's services, but privately, with the intention that the Private Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private

1    and would not be disclosed without their authorization.

2        142.    The Data Breach constitutes an intentional interference with Plaintiff's and

3    Class Members' interest in solitude or seclusion, either as to their persons or as to their private

4    affairs or concerns, of a kind that would be highly offensive to a reasonable person.

5        143.    Defendant acted with a knowing state of mind when they permitted the Data

6    Breach because they knew its information security practices were inadequate and would likely

7    result in a data breach such as the one that harmed Plaintiff and Class Members.

8        144.    Acting with knowledge, Defendant had notice and knew that their inadequate

9    cybersecurity practices would cause injury to Plaintiff and Class Members.

10       145.    As a proximate result of Defendant's acts and omissions, Plaintiff's and Class

11   Members' Private Information was disclosed to and used by third parties without authorization

12   in the manner described above, causing Plaintiff and Class Members to suffer damages.

13       146.    Unless and until enjoined, and restrained by order of this Court, Defendant's

14   wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class

15   Members in that the Private Information maintained by Defendant can be viewed, distributed,

16   and used by unauthorized persons.

17       147.    Plaintiff and Class Members have no adequate remedy at law for the injuries in

18   that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and

19   Class Members.

### COUNT III
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Classes)

20

21

22       148.    Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set

23   forth herein.

24       149.    Plaintiff and other Class Members entered into valid and enforceable express

25   contracts with Defendant under which Plaintiff and other Class Members agreed to provide

26   their Private Information (including their genetic information) to Defendant, and Defendant

27   agreed to provide genetic testing for monetary compensation and, impliedly if not explicitly,

28   agreed to protect Plaintiff's and other Class Members' Private Information.

1031088.1
CLASS ACTION COMPLAINT

150.    To the extent Defendant's obligation to protect Plaintiff's and other Class Members' Private Information was not explicit in those express contracts, the express contracts included implied terms requiring Defendant to implement data security adequate to safeguard and protect the confidentiality of Plaintiff's and other Class Members' Private Information, including in accordance with HIPAA regulations; federal, state and local laws; and industry standards. No Plaintiff would have entered into these contracts with Defendant without understanding that Plaintiff's and other Class Members' Private Information would be safeguarded and protected; stated otherwise, data security was an essential implied term of the parties' express contracts.

151.    Both the provision of DNA testing and the protection of Plaintiff's and other Class Members' Private Information were material aspects of Plaintiff's and other Class Members' contracts with Defendant.

152.    Defendant's promises and representations described above relating to HIPAA, CMIA, and industry practices, and about Defendant's purported concern about their customers' privacy rights became terms of the contracts between Defendant and their customers, including Plaintiff and other Class Members. Defendant breached these promises by failing to comply with HIPAA, CMIA, and reasonable industry practices.

153.    Plaintiff and Class Members read, reviewed, and/or relied on statements made by or provided by 23andMe and/or otherwise understood that 23andMe would protect its customers' Private Information if that information were provided to 23andMe.

154.    Plaintiff and Class Members fully performed their obligations under the contract with Defendant; however, Defendant did not.

155.    As a result of Defendant's breach of these terms, Plaintiff and other Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; they did not get the benefit of their bargain with Defendant; they lost the difference in the value of the services Defendant promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, and Plaintiff and other Class Members have been put at increased

1   risk of future identity theft, fraud, and/or misuse of their Private Information, which may take

2   months if not years to manifest, discover, and detect.

3   156.   Plaintiff and Class Members are therefore entitled to damages, including

4   restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney

5   fees, costs, and expenses.

6   **COUNT IV**
   **BREACH OF IMPLIED CONTRACT**
7   **(On Behalf of Plaintiff and the Classes, in the Alternative to Count III)**

8   157.   Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set

9   forth herein.

10   158.   Plaintiff and Class Members were required to provide their Private Information

11   to Defendant as a condition of their use of Defendant's services. By providing their Private

12   Information, and upon Defendant's acceptance of such information, Plaintiff and all Class

13   Members, on one hand, and Defendant, on the other hand, entered into implied-in-fact

14   contracts for the provision of data security, separate and apart from any express contracts

15   concerning genetic testing or other services to be provided by Defendant to Plaintiff.

16   159.   These implied-in-fact contracts obligated Defendant to take reasonable steps to

17   secure and safeguard Plaintiff's and other Class Members' Private Information. The terms of

18   these implied contracts are further described in the federal laws, state laws, and industry

19   standards alleged above, and Defendant expressly assented to these terms in their Notice of

20   Privacy Practices and other public statements described above.

21   160.   Plaintiff and Class Members paid money, or money was paid on their behalf, to

22   Defendant in exchange for services, along with Defendant's promise to protect their Private

23   Information from unauthorized disclosure.

24   161.   In their written privacy policies, 23andMe expressly promised Plaintiff and

25   Class Members that it would only disclose Private Information under certain circumstances,

26   none of which relate to the Data Breach.

27   162.   23andMe promised to comply with HIPAA standards and to make sure that

28   Plaintiff's and Class Members' Private Information would remain protected.

163.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information was Defendant's obligation to (a) use such Private Information for business purposes only; (b) take reasonable steps to safeguard that Private Information; (c) prevent unauthorized disclosures of the Private Information; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses; and (f) retain the Private Information only under conditions that kept such information secure and confidential.

164.    Without such implied contracts, Plaintiff and Class Members would not have provided their Private Information to Defendant.

165.    Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant; however, Defendant did not. Defendant breached the implied contracts with Plaintiff and Class Members by failing to conduct the following: 1) reasonably safeguard and protect Plaintiff's and Class Members' Private Information, which was compromised as a result of the Data Breach; 2) comply with their promise to abide by HIPAA; 3) ensure the confidentiality and integrity of electronic protected health information that Defendant created, received, maintained, and transmitted in violation of 45 C.F.R 164.306(a)(1); 4) implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. 164.312(a)(1); 5) implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R 164.308(a)(1); 6) identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R 164.308(a)(6)(ii); and 7) protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R 164.306(a)(2).

166.    As a direct and proximate result of Defendant's breach of the implied contracts,

Plaintiff and other Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; they did not get the benefit of their bargain with Defendant; they lost the difference in the value of the secure health services Defendant promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, and Plaintiff and other Class Members have been put at an increased risk of identity theft, fraud, and/or misuse of their Private Information, which may take months if not years to manifest, discover, and detect.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Classes)**

167.    Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

168.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and in so doing provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their Private Information protected with adequate data security.

169.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

170.    The amounts Plaintiff and Class Members paid for goods and services were used, in part, to pay for use of Defendant's network and the administrative costs of data management and security.

171.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

1031088.1
CLASS ACTION COMPLAINT

172.    Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

173.    Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

174.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to Defendant's services.

175.    Plaintiff and Class Members have no adequate remedy at law.

176.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to (a) actual identity theft; (b) an increased risk of identity theft, fraud, and/or misuse of their Private Information; (c) the loss of the opportunity of how their Private Information is used; (d) the compromise, publication, and/or theft of their Private Information; (e) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (f) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (g) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (h) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

177.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from

37
CLASS ACTION COMPLAINT

them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. &**
**PROF. CODE § 17200*, ET SEQ*. – UNLAWFUL, FRAUDULENT, AND UNFAIR**
**BUSINESS PRACTICES**
**(On Behalf of Plaintiff and the Classes)**

178.    Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

179.    The California Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200 *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

180.    By reason of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff and Class members' Private Information, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

181.    Defendant has violated Cal. Bus. and Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair, or fraudulent business acts and practices and unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the Classes.

182.    Defendant's business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the Private Information of Plaintiff and Class Members has been compromised for unauthorized parties to see, use, and otherwise exploit.

183.    Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' Private Information also constitute "unfair" business acts and practices within the meaning of Business & Professions Code sections 17200 *et seq.*, in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy,

38

**CLASS ACTION COMPLAINT**

1    immoral, unethical, oppressive and unscrupulous, and the gravity of Defendant's conduct
2    outweighs any alleged benefits attributable to such conduct.

3    184.   Defendant engaged in unlawful acts and practices with respect to the services
4    by establishing the sub-standard security practices and procedures described herein; by
5    soliciting and collecting Plaintiff's and Class Members' Private Information with knowledge
6    that the information would not be adequately protected; by violating the California
7    Confidentiality Of Medical Information Act, Cal. Civ. Code § 56, *et seq.*; by violating the
8    other statutes described above; and by storing Plaintiff's and Class Members' Private
9    Information in an unsecure electronic environment in violation of HIPAA and California's
10   data breach statute, Cal. Civ. Code § 1798.81.5, which require Defendant to take reasonable
11   methods of safeguarding the Private Information of Plaintiff and the Class Members.

12   185.   Defendant's practices were also unlawful and in violation of Civil Code
13   sections 1798 *et seq.* and Defendant's own privacy policy because Defendant failed to take
14   reasonable measures to protect Plaintiff's and Class Members' Private Information and failed
15   to take remedial measures such as notifying its users when it first discovered that their Private
16   Information may have been compromised.

17   186.   In addition, Defendant engaged in unlawful acts and practices by failing to
18   disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by
19   Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code § 1280.15(b)(2).

20   187.   Defendant's business practices as alleged herein are fraudulent because they are
21   likely to deceive consumers into believing that the Private Information they provided to
22   Defendant will remain private and secure, when in fact it has not been maintained in a private
23   and secure manner, and that Defendant would take proper measures to investigate and
24   remediate a data breach, when Defendant did not do so.

25   188.   Plaintiff and Class Members suffered (and continue to suffer) injury in fact and
26   lost money or property as a direct and proximate result of Defendant's above-described
27   wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and
28   disclosure of their Private Information and lack of notice.

189.    But for Defendant's misrepresentations and omissions, Plaintiff and Class Members would not have provided their Private Information to Defendant or would have insisted that their Private Information be more securely protected.

190.    As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their Private Information, nominal damages, and additional losses as described herein.

191.    Defendant knew or should have known that Defendant's computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' Private Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

192.    Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendant may have acquired by means of Defendant's unlawful and unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of Defendant's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

### COUNT VII
### VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CAL. CIV. CODE § 56, *ET SEQ.*
#### (On Behalf of Plaintiff and the Classes)

193.    Plaintiff restates and realleges all of the foregoing paragraphs as if fully set forth herein.

194.    At all relevant times, Defendant was a health care provider because it had the "purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health

1  care, for purposes of allowing the individual to manage their information, or for the diagnosis
2  and treatment of the individual."

3  195.  Defendant is a provider of healthcare within the meaning of Civil Code §
4  56.06(a) and maintains medical information as defined by Civil Code § 56.05.

5  196.  Plaintiff and Class Members are customers of Defendant, as defined in Civil
6  Code § 56.05(k).

7  197.  Plaintiff and Class Members provided their personal medical information to
8  Defendant.

9  198.  At all relevant times, Defendant collected, stored, managed, and transmitted
10 Plaintiff's and Class Members' personal medical information. Section 56.10(a) of the
11 California Civil Code provides that "[a] provider of health care, health care service plan, or
12 contractor shall not disclose medical information regarding a patient of the provider of health
13 care or an enrollee or subscriber of a health care service plan without first obtaining an
14 authorization."

15 199.  As a result of the Data Breach, Defendant has misused, disclosed, and/or
16 allowed third parties to access and view Plaintiff's and Class Members' personal medical
17 information without their written authorization compliant with the provisions of Civil Code §§
18 56, *et seq*.

19 200.  The hacker or hackers who committed the Data Breach obtained Plaintiff's and
20 Class Members' personal medical information, viewed it, and now have it available to them to
21 sell to other bad actors or otherwise misuse.

22 201.  As a further result of the Data Breach, the confidential nature of plaintiff's
23 medical information was breached as a result of Defendant's negligence. Specifically,
24 Defendant knowingly allowed and affirmatively acted in a manner that actually allowed
25 unauthorized parties to access and view Plaintiff's and Class Members' Private Information,
26 which was viewed and used when the unauthorized parties engaged in the above-described
27 fraudulent activity.

28 202.  Defendant's misuse and/or disclosure of medical information regarding

1031088.1

1  Plaintiff and Class Members constitutes a violation of Civil Code §§ 56.10, 56.11, 56.13, and

2  56.26.

3       203.    Additionally, because Defendant collects and analyzes genetic information

4  about Plaintiff and that information appears to have been disclosed or stolen in the Data

5  Breach due to Defendant's negligence, Defendant is liable for the statutory penalties under

6  Civil Code §§ 56.17(b) and 56.17(d).

7       204.    As a direct and proximate result of Defendant's wrongful actions, inaction,

8  omissions, and want of ordinary care, Plaintiff's and Class Members' personal medical

9  information was disclosed without written authorization.

10      205.    By disclosing Plaintiff's and Class Members' Private Information without their

11  written authorization, Defendant violated California Civil Code § 56, *et seq*., and their legal

12  duty to protect the confidentiality of such information.

13      206.    Defendant also violated Sections 56.06 and 56.101 of the California CMIA,

14  which prohibit the negligent creation, maintenance, preservation, storage, abandonment,

15  destruction or disposal of confidential personal medical information.

16      207.    As a direct and proximate result of Defendant's wrongful actions, inaction,

17  omissions, and want of ordinary care that directly and proximately caused the Data Breach,

18  Plaintiff's and Class Members' personal medical information was viewed by, released to, and

19  disclosed to third parties without Plaintiff's and Class Members' written authorization.

20      208.    As a direct and proximate result of Defendant's above-described wrongful

21  actions, inaction, omissions, and want of ordinary care that directly and proximately caused the

22  Data Breach and its violation of the CMIA, Plaintiff and Class Members are entitled to (i)

23  actual damages, (ii) nominal damages of $1,000 per Plaintiff and Class Member, (iii) punitive

24  damages of up to $3,000 per Plaintiff and Class Member, and (iv) attorneys' fees, litigation

25  expenses and court costs under California Civil Code § 56.35.

26

27

28

1
2
3

**COUNT VIII**
**VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT**
**CAL. CIV. CODE § 17598, *ET SEQ*.**
**(On Behalf of Plaintiff and the Classes)**

4       209.    Plaintiff incorporates by reference the allegations contained in each and every

5   paragraph of this Complaint.

6       210.    The California Consumer Privacy Act ("CCPA"), portions of which were

7   operative beginning January 1, 2020, was enacted by the California Legislature "to further the

8   constitutional right of privacy and to supplement existing laws relating to consumers' personal

9   information, including, but not limited to, Chapter 22 (commencing with Section 22575) of

10  Division 8 of the Business and Professions Code and Title 1.81 (commencing with Section

11  1798.80)." Cal. Civ. Code § 1798.175. The CCPA applies to "the collection and sale of all

12  personal information collected by a business from consumers." *Id*.

13      211.    "Businesses," defined to include a "corporation" that "collects consumers'

14  personal information" that "does business in the State of California" and has annual gross

15  revenues in excess of $25 million, are required to comply with the CCPA. Cal. Civ. Code

16  §1798.140(c). Defendant is a "business" under the CCPA.

17      212.    The CCPA protects "consumers." "Consumer" is defined as "a natural person

18  who is a California resident[.]" Cal. Civ. Code § 1798.140(g). Plaintiff and members of the

19  California Subclass are "consumers" within the meaning of the CCPA.

20      213.    The protections of the CCPA extend to "personal information" of consumers.

21  "Personal information" is defined by the CCPA to include "information that identifies, relates

22  to, describes, is reasonably capable of being associated with, or could reasonably be linked,

23  directly or indirectly, with a particular consumer or household." Cal. Civ. Code §

24  1798.140(o)(1). "Personal information includes, but is not limited to, the following if it

25  identifies, relates to, describes, is reasonably capable of being associated with, or could be

26  reasonably linked, directly or indirectly, with a particular consumer or household: (A)

27  Identifiers such as... driver's license number, ...." Cal. Civ. Code § 1798.140(o)(1)(A). The PII

28  of Plaintiff and members of the California Subclass that was compromised in Defendant's data

CLASS ACTION COMPLAINT

breach included "personal information" within the meaning of the CCPA.

214. The CCPA provides consumers with the right to institute a civil action where the consumers' "nonencrypted and nonredacted personal information" was the subject of "an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." Cal. Civ. Code § 1798.150(a)(1).

215. Plaintiff and California Subclass members provided to Defendant their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their PII.

216. Defendant, as a "business" covered by the CCPA, owed a duty to Plaintiff and members of the California Subclass to implement and maintain reasonable security procedures and practices to protect the PII of Plaintiff and members of the California Subclass.

217. Defendant breached this duty. The fact that Plaintiff's and the California Subclass's PII was accessed without authorization establishes that Defendant did not take adequate data security measures to store and protect its customers' PII. Defendant failed to take adequate security measures to protect Plaintiff's and the California Subclass members' PII.

218. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and the members of the California Subclass were subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty.

219. On behalf of the California Subclass, Plaintiff seeks injunctive relief in the form of an order (a) enjoining Defendant from continuing to violate the CCPA; and (b) requiring Defendant to employ adequate security practices consistent with law and industry standards to protect class members' PII.

220. Plaintiff and California Subclass members are at high risk of suffering, or have already suffered, injuries that cannot be remedied monetarily, such as reductions to their credit scores and identity theft. As such, the remedies at law available to Plaintiff and California

Subclass members are wholly inadequate by themselves.

221.   The full extent of the existing and potential harm caused by Defendant's failure to protect its customers' PII cannot be remedied by monetary damages alone because monetary compensation does nothing to prevent the reoccurrence of another data breach in the future.

222.   Plaintiff presently seek only injunctive relief and any other relief the court deems proper pursuant to this section, such as attorneys' fees.

**COUNT IX**
**INJUNCTIVE / DECLARATORY RELIEF**
**(On Behalf of Plaintiff and the Nationwide Class)**

223.   Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

224.   This Count is brought under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

225.   As previously alleged, Plaintiff and Class Members entered into an implied contract that required Defendant to provide adequate security for the Private Information they collected from Plaintiff and Class Members.

226.   Defendant owes a duty of care to Plaintiff and Class Members requiring them to adequately secure Private Information.

227.   Defendant still possesses Private Information regarding Plaintiff and Class Members.

228.   Since the Data Breach, Defendant has announced few if any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent further attacks.

229.   Defendant has not satisfied their contractual obligations and legal duties to Plaintiff and Class Members. In fact, now that Defendant's insufficient data security is known to hackers, the Private Information in Defendant's possession is even more vulnerable to cyberattack.

1031088.1
CLASS ACTION COMPLAINT

230.   Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their Private Information and Defendant's failure to address the security failings that lead to such exposure.

231.   There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties. Plaintiff therefore seek a declaration (1) that Defendant's existing security measures do not comply with their contractual obligation and duties of care to provide adequate security, and (2) that to comply with their contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all members of the Classes, request judgment against the Defendant and that the Court grant the following relief:

A. An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Classes requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Classes requested herein;

B. Injunctive relief requiring Defendant to take appropriate measures to strengthen their data security systems that maintain personally identifying and other information to comply with the applicable state laws according to proof;

C. An order requiring Defendant to pay all costs associated with class notice and administration of class-wide relief;

D. An award to Plaintiff and all members of the Classes of compensatory, consequential, incidental, nominal, and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

E. An award of nominal damages of $1,000 per Plaintiff and Class Member to Plaintiff and all members of the Classes under California Civil Code § 56.35;

F. An award of punitive damages of up to $3,000 per Plaintiff and Class Member under

1 | California Civil Code § 56.35;

2 |      G. An award of credit monitoring and identity theft protection services to Plaintiff and

3 | all members of the Classes;

4 |      H. An award of attorneys' fees, costs, and expenses, as provided by law or equity;

5 |      I. An award for equitable relief requiring restitution and disgorgement of the revenues

6 | wrongfully retained as a result of Defendant's wrongful conduct;

7 |      J. An order requiring Defendant to pay pre-judgment and post-judgment interest, as

8 | provided by law or equity; and

9 |      K. Such other and further relief as this Court may deem just and proper.

10 | Dated: November 17, 2023         **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Marc L. Godino*

Marc L. Godino (182689)
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
Email: mgodino@glancylaw.com

Brian P. Murray (pro hac pending)
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212)-884-0988
bmurray@glancylaw.com

**LAW OFFICE OF PAUL C. WHALEN, P.C.**
Paul C. Whalen
768 Plandome Road
Manhasset, NY 11030
Tel.: (516) 426-6870
paul@paulwhalen.com

*Attorneys for Plaintiff and the Proposed Class*

1031088.1